## Lina Voss, Administratrix, Appellee, v. Morris & Company, Appellant.

## Gen. No. 16,525.

NEGLIGENCE—*when servant injured while attempting act of rescue cannot recover.* If a servant be in a position of peril another servant of the same master acting upon no order of his master, cannot recover if injured, nor can his personal representatives if he lose his life, in the absence of any showing of negligence upon the part of the master after he entered upon the work of rescue.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the HON. BEN M. SMITH, Judge, presiding. Heard in this court at the March term, 1910. Reversed. Opinion filed April 19, 1912. Rehearing denied May 7, 1912.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; RALPH M. SHAW and EDWARD W. EVERETT, of counsel.

FRANCIS J. WOOLEY, for appellee.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

This is an appeal from a judgment for $7,500 in the Superior Court of Cook County against appellant, Morris & Company, for fatal injuries received by deceased while in its employ. Upon a previous trial, a verdict for a like amount was rendered, and was set aside by the court, which granted a new trial.

At about six o'clock P. M. of May 2, 1906, one Joseph Hickish, an engineer in charge of the engine room at appellant's plant, apparently out of the line of his employment, and without being ordered or directed to do so, left his engine room and went to the fume condensing tank, about thirty feet away, for the purpose of making a repair upon it to prevent foul odors entering the engine room during the night. The duty of making this repair was that of the steamfitters who worked on the day shift. Hickish went down into the tank where he was overcome by the foul gases. One Searing attempted to go down into the tank at the bottom of which Hickish was lying, but finding that he was being overcome by the gases, he climbed up the ladder and got out of the tank. Thereupon word having gotten about that Joe Hickish was down in the tank, men from various departments gathered at the tank and attempted to rescue him. For that purpose, Wiliam Voss went down into the tank where he, too, was overcome, and when both he and Hickish lost their lives.

The case was tried upon the first and the third and fourth additional counts as amended. The first count alleges that Hickish was inside the condensing tank

for the purpose of making repairs, and had been over-
come by the noxious gases, and that Voss was em-
ployed as a water tender; that the superintendent
negligently ordered him to go into the tank for the
purpose of assisting Hickish, and that by the use of
due care, appellant should have known that it en-
dangered the life of Voss to order him into the tank;
that Voss obeyed the order, and, while using due care
for his own safety and in ignorance of the risk and
extent of the danger, he went into the tank and was
overcome.

The third count, as amended, alleges that in the
course of appellant's business it was necessary for
various of its servants from time to time to enter the
condensing tank to make repairs, to do which it was
necessary to draw off the water ordinarily in the tank;
that when the water was drawn off, gases from the
rendering tank accumulated, filling the tank and mak-
ing it dangerous to life; that Voss entered the tank
with appellant's knowledge and authority for the
purpose of assisting another of appellant's servants
who had been making repairs to said tank, and who
had been overcome by the gases; that it was the duty
of appellant to provide a safe place in the tank for
Voss to do the work; that appellant failed to furnish
such a safe place to work; that appellant had knowl-
edge of the dangers and that Voss was ignorant of
the risk and extent of the danger, and went into the
tank in connection with said repairs to assist the
other servant within the tank, and through appellant's
negligence was overcome by the fumes.

The fourth count, as amended, alleges that in the
course of appellant's business it became necessary for
divers of its servants from time to time to enter the
tank for the purpose of making repairs upon it, etc.
That to make repairs it was necessary to draw off the
water, and this permitted the fumes to accumulate and

so fill the tank so that persons could not enter it without great danger of suffocation; that Voss was in appellant's employ as a water tender in the boiler room; and that it became his duty in connection with said repairs to go down into the tank for the purpose of assisting another servant of appellant, who was in the tank; the tank was full of gases, which appellant knew, or should have known, in time to have prevented the injury; that Voss was ignorant of the danger and of the method of clearing the tank of gases; that he was about to descend into the tank for the purpose of assisting and saving another workman, who had been overcome in the tank; that the foreman by due care would have been aware of the risks and dangers of entering the tank; and it became appellant's duty to warn Voss of the risks and danger and inform him that the tank contained poisonous fumes, which could not be breathed; that appellant negligently failed to warn Voss of these risks and dangers, and that without knowledge on his part he entered the tank for the purpose of assisting and saving the other employe and was overcome by gas.

A plea of Statute of Limitations was filed to these amended counts because it is claimed that they embodied new theories of negligence; viz., that Voss entered the tank with the knowledge and authority of appellant to assist the engineer, who had been overcome by gas, whereas the original theory was that Voss was ordered to go into the tank in the line of his work,—but the court sustained a demurrer to this plea.

In the record are photographic views and plans and specifications of the tank. From these it appears to have been constructed entirely of metal; it was an upright cylindrical body six feet in diameter. In the upper end, which was convex, or crowning, was the manhole, 16 in. x 22 in. in size, through which to gain

access to the inside of the tank. The straight perpendicular part, or outside, of the tank extended from the top downward a distance of eight feet, from which point it was sloped inward and downward in an inverted cone shape so that at a distance of 2½ feet down from the plane of the bottom of the full size of the cylinder, it was reduced to twelve inches in diameter. This tank was so set that it was thirteen feet up from the floor of the room to the manhole in the convex or crowning upper end of the tank. It was constructed entirely of new materials and new pipes, and had never before been out of order. Its purpose was to condense fumes from the rendering tanks and thus prevent the escape of foul odors. It stood in a sort of an alley way about fourteen feet from the engine room, and adjoining the tank room, in which last were the tanks where the lard and offal were cooked. The fumes passed in steam vapor through pipes from the tank room building, and then through a three inch pipe leading from the tank room into the condensing tank. This pipe entered the condensing tank at the top and extended downward till near its bottom end. Cold water was continuously running into this tank. A part of the air containing the foul odors was condensed and passed out from the bottom of the tank into the sewer; while some of the odors passed up through the water to its surface and then through another pipe into the combustion chamber in the boiler room where they were passed through the fire up the chimney and thus consumed.

On the day of the accident, one Searing, called a watchman, by appellant, but by appellee deemed a foreman, came to his work with the night shift about 5:30 P. M. He attempted to close the valve at the bottom of the tank, but was unable to do so. He walked to the engine room and asked one Zimmer, an oiler there, if he knew what was the matter. Zimmer tried

but could not close the valve and told him to see Hickish, the engineer. Hickish tried the valve and concluded that something had fallen into it from the inside, and it was found that a piece of the three inch pipe carrying the fumes into the tank had fallen into the valve, and this prevented it from being closed. The sole use of the valve was to open the pipe at the bottom of the tank and thus permit the water to run off into the sewer. Searing told Hickish to let it go until morning; that there were steamfitters whose duty it was to make this repair, but Hickish said "No, the place will be full of fumes;" so he took a ladder and with the help of Searing got the manhole open,—put a ladder down the inside of the tank and went down to remove the piece of pipe which had fallen into the valve. He told Searing to get a wire. Searing, after going part way down the ladder on the outside, went back up to find out what kind of a wire Hickish wanted. While looking down into the tank Searing saw Hickish, who had got down near the bottom of the ladder slip off to one side and fall over in the tank.

Searing, who then thought Hickish was stunned, got down part way into the tank and called to Hickish who did not answer. He had a queer feeling come over him as though in a close place; he got out on top of the tank and called to one Frank Peal, who was in charge of the rendering tanks in the adjoining building; Peal came but went back to the boiler room and called, "Come on boys." Returning with a hook and rope, Peal with Searing, the two being then together on top of the tank, tried to slip a knot over Hickish's leg and started to raise him. At this point Voss appeared; he came up on the tank and soon went down on the inside and slipped the rope under Hickish's shoulders, and then he fell over. Hickish's body was drawn up and then Voss', but both were dead.

Appellant seeks a reversal of the judgment against

it, and contends, among other things, that it was not guilty of the negligence which was the proximate cause of the injury to Voss; that Voss was injured while attempting to rescue Hickish from a perilous position, and that his estate cannot recover unless appellant was guilty of negligence in causing Hickish's peril or was guilty of negligence toward Voss after he began the attempt to relieve; that Voss voluntarily assisted in the work of rescue without any legal obligation to do so and, therefore, it was at his risk; that Voss assumed the risk of entering the tank, and was injured solely because of his own contributory negligence; that no order was given Voss to undertake the effort which cost his life by any one authorized to give any such order; that there is no duty imposed by law on the master to warn the servant as to dangers which are open to the knowledge or observation of a person of ordinary intelligence; that where it is sought to recover because the injured was ordered into a dangerous place, he must show: (1) That he was acting in obedience to an order; (2) that the one giving the order was his superior, whose authority he was required to obey; (3) that the danger was known to such superior, or by exercise of reasonable care should have been known by him; (4) that the injured party did not know, and by the exercise of reasonable care should not have known, of the danger; (5) that the injured person was free from negligence; that the court erred in admitting and rejecting evidence and in giving, refusing and modifying instructions. These various contentions are severally met and denied, or else their applicability to the case at bar is controverted by appellee.

We have, with great care, gone through the testimony as abstracted, and have considered the instructions as well as the various rulings of the court below, of which complaint is made, and have reached the conclusion that the judgment of the court cannot stand.

Voss v. Morris & Co., 169 Ill. App. 514.

In the extended consideration of the case which we have given it, we have been aided by the elaborate and able printed briefs and arguments of counsel for both sides, and their helpful oral arguments.

In view of the conclusions we have reached, it will not be necessary to discuss all the questions raised by appellant. Counsel for appellee, in his argument, narrows the controversy by stating his contention to be that it is immaterial whether Hickish acted with or without authority when he went into the tank, or whether defendant was or was not negligent toward Hickish. He does contend, however, that Voss was not a volunteer, and did not assume the risk of injury; nor was he guilty of contributory negligence,—because Searing had ample notice of the danger, was a foreman and had authority to and did order or request Voss to go down into the tank where he received his fatal injury.

The abstract and briefs disclose a long and persistent controversy as to whether Searing was, as contended by the appellant, a mere watchman, or was, in fact, in general charge of the men and with such duties toward them, and in the conduct of the business, as constituted him a foreman in fact. Appellee did not attempt to establish Searing's authority by direct evidence, but examined ten witnesses at length as to acts of Searing while they were employed by appellant, and having more or less bearing upon the question of Searing's authority,—real or apparent. A careful reading of this testimony, including all that was said by the witnesses which modified their statements relied on to show his authority, and of the testimony on behalf of appellant bearing upon the question, leaves us in great doubt whether the jury were justified in thinking it proved that Searing was in any real sense a foreman, whose orders Voss was bound to obey.

We think, too, the testimony warrants the conclusion which counsel for appellee apparently accepts, that ap-

pellant was not guilty of any negligence toward Hickish, and that the decisive question in the case is,—was appellant guilty of negligence toward Voss, proximately causing the fatal injury?

Of course, appellee contends not only that Searing was a foreman over Voss, whose orders Voss must obey, but that Searing, as such vice principal, with knowledge of the danger which Voss lacked and could not have had in the exercise of his powers of observation and reason, gave Voss an order to go down into the tank, as a result of obeying which order Voss lost his life.

Upon the important question as to what, if any, order was given Voss by Searing, the record contains the testimony of four witnesses, of which three,—Matthew Zimmer, George Segar, and Frank Peal,—were called by appellee, and Searing only by appellant.

Matthew Zimmer testified concerning this phase of the affair: "Searing got on top of tank. I followed him with rope. When I got to the top the manhole in tank was open. Only Searing and I were on top. It was dark in tank so I took lantern and dipped it in manhole to see if I could see him. The light flickered. I took it out and said, 'Al, I cannot go down; I am a cripple.' Before that nothing had been said about going down. I went back to my work in the engine room. Searing was only one left on top of tank. While I was out there Segar came down the ladder. Voss came in from boiler room. Searing was on top and he called, 'Come up Billy.' At that time didn't hear Searing say anything further than those words."

Segar testified that on the night of the accident, while he was on top of the boiler, he heard some one, but does not know who, "holler" that Joe fell in tank. When he got through with his boiler, he went out and saw Searing on top of tank and all he said was, "Joe fell in." "There was no one on the tank there but Searing and myself. He asked me if I would go down.

I studied a minute and said, 'Yes, wait till I get my jumpers.' " He started down the ladder and about when he got down he met Billy Voss. He then "hollered" up, "Here, Al., comes Billy, he is slimmer than myself, he can get in easier." "So Al. said 'Come up, Billy,' and he went up to top of tank where Searing and Frank Peal then were." On cross-examination he said: "Looked at them, but did not stay long enough to know what they intended to do. * * * There was a good deal of excitement on there about that time. Someone called, 'Joe fell in tank.' * * * Everybody was making suggestions. Some of others told others to do something; they all made suggestions there. * * * Peal made some suggestions."

Peal testified, after describing details as to Hickish: "Searing 'hollered' and I came out. Asked me to come out and help him get him out. * * * We tried to get him out. * * * Had a hook on rope; think we got it around him,—not sure. * * * I went down to boiler room and asked to get him out. Didn't speak to any one in particular. Don't remember whether Searing was up there on tank when Voss got there or not. He was on the ground or on tank. After Voss went up there, I went up; I wanted to put rope around Voss to get him down in tank. I took rope and tied it around Voss. * * * The rope was a long one and I tied middle of it around him so as to get a chance to put end of it around Hickish. * * * Voss tied rope around Hickish and fell over." On cross-examination, he said that he did not hear Searing give any orders on the night of the accident. "On top of tank when Voss was there about to go in, Searing did not tell Voss to go into tank. Voss ran up there himself. Started to go down tank. I told Voss, 'Wait a minute until I put this rope around you.' He didn't wait nor give me time and rope was put around him very loosely. Didn't have time to tie it."

Searing, a witness for appellant, testified as to this

phase of the case: "I got out on top of tank and call-ed for Frank Peal to come down and help me, that Joe had fallen into tank, and Peal came down. We couldn't do anything without some rope, and he went to boiler room. Heard him 'holler,' 'Come on, boys,' or something like that. Peal brought a hook and some-body had thrown a rope. Peal and I were on top of tank. Voss then came up on tank, pushed me to one side, started to go down in tank, and Peal told him not to go down in tank. Peal said, 'Don't go down, wait.' He was going down without anything on him, without a rope or anything. Someone tied a rope around him and he went down tank. Didn't tell or ask Segar to go down in tank and he didn't say to me at any time, 'Here comes Billy. He is slimmer than I am, and he can go into the tank.' I didn't say at any time, 'Come up Billy.' Didn't tell Voss at any time to go into tank. First I knew that Voss was there, was when he came up on tank alongside of me. Hadn't seen him before that evening. After Voss got up there, he started right down in tank without saying a word to anybody." On cross-examination said he might have testified at Coroner's inquest: "I had ropes and hooks brought and tried to get deceased out unsuccessfully," but does not remember using such words. "Peal and I were on tank on opposite sides of manhole, stooping to pull up. Voss came up and pushed me away and started to go down tank. Peal told him to put rope around him. I didn't say anything to him about it. I told him not to go down tank at all. Don't remember saying, 'Don't go down without putting rope on your-self.' "

This testimony is practically all there was given on the subject of the alleged order of Searing. We do not think the evidence in the case, considered in its entirety, and with all reasonable inferences drawn therefrom, supports the contention of appellee that Voss was act-ing under orders. Much as we may admire his sympa-

thy for a friend in distress and his personal courage in going to his relief, we cannot create a legal liability against appellant upon a conjecture. We think the witness, Segar, was probably correct when he testified: "There was a good deal of excitement on there about that time. Heard three or four people talking loud, but not the boys around the boiler room. Everybody was making suggestions. Some of others told others to do something; they all made suggestions there, * * * Peal made some suggestions."

In our opinion, the testimony fails to establish any order by Searing, as foreman or vice principal, as a result of obeying which Voss lost his life,—and fails to show that appellant was guilty of any actionable negligence toward Voss. It follows, therefore, that the judgment of the court below must be reversed.

*Judgment reversed.*